## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**ANTHONY BACKHURST, an individual,
and ANGEL CRUZ, an individual,**

   **Plaintiffs,**

**v.**         **CASE NO. 2:18-cv-61-FtM-99CM**

**LEE COUNTY BOARD OF COUNTY
COMMISSIONERS, a political subdivision
of the State of Florida,**

   **Defendant.**

_____/

## <u>DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION<br>FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>

Defendant, LEE COUNTY BOARD OF COUNTY COMMISSIONERS ("Defendant" or "County"), pursuant to Local Rule 3.01(b), United States District Court, Middle District of Florida, hereby responds to Plaintiffs' Opposed Motion to Amend Complaint (Dkt. No. 26; Motion to Amend).  Plaintiffs' Motion to Amend should be denied to the extent that it seeks to amend, not dismiss, the False Claims Act claim.  To the extent the Motion to Amend seeks to dismiss the Florida False Claims Act count, Defendant agrees that the claim should be dismissed as it should not have been brought in the first instance.

Plaintiffs have failed to show good cause under Rule 16(b) for this amendment.  Indeed, Plaintiffs do not even acknowledge their burden to satisfy this standard.  Moreover, Plaintiffs' amendment to the False Claims Act count is futile, which further supports the denial of the

Motion to Amend.  These grounds are more fully set forth in the accompanying memorandum of law.

## MEMORANDUM OF LAW

### I.     Background

On August 7, 2017, Plaintiffs filed a one-count Complaint and Demand for Jury Trial (Dkt. No. 1-4 at 1; Complaint) for alleged violations of the Florida Public Sector Whistle-blower Act, Florida Statutes § 112.3187 ("Whistle-blower Act"), in state court.  Specifically, they alleged that the County retaliated against them for engaging in protected activity when it terminated their employment.  (Compl. ¶¶ 24, 37-38).  Plaintiffs served Defendant with the Complaint on October 12, 2017.  (See Summons (Dkt. No. 1-1)).

On November 1, 2017, Defendant filed a motion to dismiss based on Plaintiffs' failure to exhaust administrative remedies.  (See Defendant's Motion to Dismiss Plaintiffs' Complaint (Dkt. No. 3)).  Specifically, Defendant explained that Plaintiffs failed to follow the whistle-blower procedure established by ordinance, which also provided that the County would contract with the Florida Division of Administrative Hearings (DOAH) upon the receipt of a complaint within the time period provided by § 112.3187.  (Id.).  As the court lacked subject matter jurisdiction over the claim, Defendant requested that the court dismiss the case with prejudice.  (Id.).  A hearing on this motion was set for January 16, 2018.  (See Notice of Hearing (Dkt. No. 1-4 at 26)).

On January 11, 2018, Plaintiffs filed the Amended Complaint, adding claims under the First Amendment, False Claims Act, and Florida False Claims Act.  (See Amended Complaint and Demand for Jury Trial (Dkt. No. 2; Amended Complaint)).  Plaintiffs also maintained their

barred claims under the Whistle-blower Act.  (Id.).  As the result of the addition of federal claims, Defendant timely and properly removed this action to this Court on January 26, 2018. (See Notice of Removal (Dkt. No. 1)).

Because Plaintiffs' Amended Complaint, which was amended as of right under the Florida Rules of Civil Procedure, failed to state a claim as a matter of law, Defendant explained the lack of merit in Plaintiffs' claims during a case management conference on February 26, 2018.  During this conference, Defendant specifically explained, in pertinent part, that the claims under the Florida False Claims Act (FFCA) and False Claims Act (FCA) were patently frivolous and must be dismissed.  Plaintiffs agreed to review those claims to determine whether to drop them from the amended complaint.

As a result, on February 26, 2018, Defendant filed a motion for extension of time to respond to the Amended Complaint, outlining this conferral between the parties.  (Defendant's Unopposed Motion for Extension of Time to Respond to the Complaint (Dkt. No. 18)).  The Court granted this motion, which extended the deadline to respond to March 13, 2018. (Endorsed Order (Dkt. No. 19)).

By March 12, 2018, Plaintiffs had not filed or sought to file an amended complaint dropping the two claims.  Thus, Defendant follow-up with Plaintiffs to find out the status, given the upcoming deadline to respond to the Amended Complaint.  Plaintiffs' counsel responded that Plaintiffs will be amending the Amended Complaint to omit the FFCA claim and that he was awaiting confirmation as to the FCA claim.

The next day, on March 13, 2018, having not received a motion to amend or amended complaint, Defendant follow-up again with Plaintiffs to find out the status and inquire whether

3

another motion for extension was necessary.  Plaintiffs' counsel responded that another motion was necessary, but that Plaintiffs will be amending the Amended Complaint.  Plaintiffs did not indicate that the amendment would be anything other than dropping the FFCA and FCA claims as the parties had previously discussed.  (Defendant's Unopposed Motion for Extension of Time to Respond to the Complaint (Dkt. No. 18)).

Defendant responded that it would seek another extension of time and asked Plaintiffs whether a request of two weeks would be sufficient.  Plaintiffs confirmed that two weeks would be sufficient.  As a result, on March 13, 2018, Defendant filed a motion for extension of time seeking until March 27, 2018, to respond to the Amended Complaint.  (See Defendant's Unopposed Motion for Extension of Time to Respond to the Complaint (Dkt. No. 21)).  In this motion, Defendant represented the parties' conferral and included Plaintiffs' statement that they would be amending the Amended Complaint.  (Id.).  The court granted this motion.  (See Endorsed Order (Dkt. No. 22)).

On March 13, 2018, the parties filed their case management report, where they agreed that the deadline to amend pleadings should be April 27, 2018.  (See Case Management Report (Dkt. No. 20)).  The Court adopted this deadline in its Case Management and Scheduling Order (Dkt. No. 23)).

By March 26, 2018, Defendant still had not received Plaintiffs' amended complaint or a motion to amend.  As a result, it contacted Plaintiffs to find out the status and reminded Plaintiffs that its deadline to respond was March 27, 2018.  Plaintiffs' counsel responded that he had been occupied with other matters, but he would try to draft the amended complaint by Friday, March 30, 2018.  He suggested that it would be better for Defendant to move for

4

another extension of time until March 30, 2018.

Defendant explained that it did not want to keep moving for extensions of time and creating extra work for the Court. Thus, Defendant suggested that it move for an extension until the Court rules on the forthcoming motion to amend. Plaintiffs agreed to that extension, but indicated that they will try to get the amended complaint filed this week. They did not indicate that they would be amending the Amended Complaint to do anything other than drop the FFCA and FCA claims.

On March 27, 2018, Defendant filed its Unopposed Motion for Extension of Time to Respond to the Complaint (Dkt. No. 24), which represented that Plaintiffs' motion to amend is forthcoming and requested that the Court extend the deadline to respond to the Amended Complaint. The Court granted the motion, in part, providing Defendant with ten days after the Court rules on the forthcoming motion to amend or, if Plaintiffs did not file the motion by April 27, 2018 (the deadline to amend), then providing Defendant until May 4, 2018, to respond.

On April 10, 2018, Plaintiffs finally provided a copy of the proposed amended complaint. However, instead of dropping the FFCA and FCA claims as previously discussed, Plaintiffs asserted that they were clarifying the source of federal funds for the FCA claim. On April 26, 2018, Defendant explained that it opposed the motion to amend because Plaintiffs still do not plead any facts that they complained about fraud against the federal government or provide any facts in support of this claim under the FCA.

Plaintiffs, however, did not file a motion to amend by April 27, 2018. Instead, they waited until May 1, 2018, after the deadline to amend to file their Motion to Amend, seeking

to amend the FCA claim and drop the FFCA claim.  (See Motion to Amend).

As set forth above, Defendant does not oppose the dismissal of the FFCA claim. Indeed, as explained by Defendant on February 26, 2018, the express language of the FFCA provides that "[n]o court shall have jurisdiction over an action brought under this act against any county or municipality."  Fla. Stat. § 68.087(6) (2017).  Thus, this claim should not have been filed in the first place.  However, Plaintiffs also should have dismissed the FCA claim instead of now seeking to amend it.[1]  Moreover, Plaintiffs cannot establish good cause under Rule 16(b) for failing to seek leave to amend prior to the deadline in the scheduling order.  As a result, Plaintiffs' Motion to Amend should be denied to the extent that it seeks to amend, and not dismiss, the FCA claim.

## II.  Legal Analysis

### A.  Plaintiffs Failed to Establish Good Cause for the Amendment.

As an initial matter, Plaintiffs' Motion to Amend has not been timely filed.  The Case Management and Scheduling Order (Dkt. No. 23) set the deadline to amend pleadings as April 27, 2018, which was also the deadline requested in the parties' Case Management Report (Dkt. No. 20).  The Court confirmed this deadline in its Endorsed Order (Dkt. No. 25), granting Defendant an extension of time to respond to the Amended Complaint.  Plaintiffs, however, did not file the Motion to Amend until May 1, 2018.

---

[1] Defendant also asserts that Plaintiffs' claims under the First Amendment and Florida Public Sector Whistle-blower Act fail as a matter of law.  However, as Plaintiffs are not seeking to amend those claims, these arguments will be presented in a motion to dismiss once the operative pleading is determined.  (See Endorsed Order (Dkt. No. 28)).

Accordingly, Plaintiffs must first satisfy the good cause standard set forth in Rule 16(b) before consideration of the standard for amendment of pleadings set forth in Rule 15(a).  See, e.g., Belnavis v. Nicholson, No. 8:05-cv-778-T-23TGW, 2006 WL 3359684, at *6 (M.D. Fla. Nov. 20, 2006); see also Baker v. City of Safety Harbor, Case No. 8:07-cv-1120-T-23TGW, 2008 WL 11336627, at *1 (M.D. Fla. May 15, 2008) (recognizing that "the Eleventh Circuit has repeatedly held that good cause is required for amendments after the scheduling order deadline").

In order to establish good cause under Rule 16(b), Plaintiffs must show that they exercised diligence in complying with the Court's Order, i.e. they must show that, despite their diligence, they could not seek to have amended or sought leave to amend prior to the entry of the Court's order.  See HomeBingo Network, Inc. v. Cadillac Jack, Inc., Civil Action No. 05-0701-WS-B, 2006 WL 3469515, at *2 (S.D. Ala. Nov. 29, 2006) (citing Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)).  The lack of diligence can be the failure to act on information already known before the deadline to amend pleadings or the failure to discover that information before the deadline.  See Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 & n.3 (11th Cir. 2009).  As a result, "[i]f a plaintiff has all of the factual information upon which a proposed amendment is based and fails to diligently seek amendment, a district court acts within its discretion in finding that such a lack of diligence precludes modification of its Scheduling Order and denies the request to amend."  Butterworth v. Laboratory Corp. of Am. Holdings, Case No. 3:08-cv-411-J-34JRK, 2011 WL 13137954, at *5 (M.D. Fla. Oct. 26, 2011); see also Baker, 2008 WL 11336627, at *2 (concluding that the plaintiff's mistake of law or failure to sue the correct party was not good cause for an

7

amendment under Rule 16(b)).

In this case, Plaintiffs do not address Rule 16(b) or attempt to set forth good cause to justify their late filing.  (Motion to Amend at 1-3, 11-12).  Instead, Plaintiffs only address the standard under Rule 15(a).[2]  Plaintiffs have failed to identify how, through the exercise of diligence, they could not have moved to amend within the deadline set by the Court.

Defendant first raised the deficiencies in the Amended Complaint on February 26, 2018, but a good faith review of these claims by Plaintiffs prior to that date would have revealed the need to dismiss these claims. Nonetheless, by March 12, 2018, Plaintiffs recognized the need to amend the Amended Complaint and represented that they would be seeking to amend.  Plaintiffs did not indicate that the amendment would be anything other than dropping the FFCA and FCA claims.

On March 27, 2018, a month before the deadline, Plaintiffs again confirmed that their motion to amend was forthcoming.  However, Plaintiffs did not provide a draft second amended complaint until April 10, 2018.  In this correspondence, Defendant learned, for the first time, on April 10, 2018, that Plaintiffs would be seeking to amend the FCA claim, not dismiss it.  Defendant clearly explained its opposition in writing to Plaintiffs' request to amend on April 26, 2018.  Plaintiffs, however, did not seek leave to amend until May 1, 2018.  As a result, Plaintiffs cannot establish good cause for the amendment when they had knowledge of

---

[2] Plaintiffs assert that there has been no undue delay in seeking to amend (Motion to Amend at 11), but, as set forth in the background section of this Response, this assertion is not accurate. Moreover, Plaintiffs assert that this is their first amendment.  (Motion to Amend at 11).  That contention also is not true, as Plaintiffs previously filed the Amended Complaint, as of right, on January 11, 2018.  This amendment, if permitted, would be Plaintiffs' third complaint.

the facts and failed to seek leave to amend prior to the deadline.

**B. Plaintiffs' FCA Claim Is Frivolous and It Would Be Futile to Allow the Second Amended Complaint.**

In addition to the lack of good cause to allow this amendment after the deadline in the scheduling order, it would be futile to allow this amendment to the FCA claim.  Futility is a substantial reason that warrants denial of a motion to amend.  Foman v. Davis, 371 U.S. 178, 182 (1962) (concluding that the court can deny leave for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."); Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005).

A proposed amendment is futile "when the complaint as amended would still be properly dismissed."  Hearn v. Int'l Business Machines, 588 F. App'x 954, 958 (11th Cir. 2014) (internal quotation marks omitted).  In other words, an amendment is futile when the "proposed amendment fails as a matter of law."  Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (concluding that the proposed amendment failed as a matter of law and therefore the motion to amend was properly denied based on futility).

In order to state a claim as a matter of law under Rule 8(a) of the Federal Rules of Civil Procedure, the "complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 974 (11th Cir. 2008); see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("'[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal'").

9

The Rule 8(a) standard has been described as "whether the 'allegations plausibly suggest[ ] ([and are]) not merely consistent with)' a violation of the law."  Davis, 516 F.3d at 974 n.43 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007)); see also Jackson, 372 F.3d at 1263 (finding that "[t]o survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims").  Plaintiffs have failed to satisfy this standard for the FCA claim.

The False Claims Act was enacted in 1863 to stop fraud against the federal government by contractors during the Civil War.  United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018); see also Hale v. Moreland Altobelli Associates, Inc., 1:14-CV-00065-WCO, 2014 WL 12235187, at *3 (N.D. Ga. Sept. 4, 2014) ("The False Claims Act is a 'statutory scheme designed to discourage fraud against the federal government.'" (emphasis added)).  As a result, the False Claims Act prohibits a person from knowingly presenting false claims to the federal government, knowingly making a false statement to cause the federal government to pay a claim, or knowingly making a false record or statement to decrease an obligation to pay the federal government.  U.S. ex rel. Mastej v. Health Mgmt. Associates, Inc., 591 F. App'x 693, 696–97 (11th Cir. 2014).  Accordingly, the only acts prohibited by the FCA require the involvement of the federal government.  U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 809 (11th Cir. 2015) ("The FCA prohibits fraud against government programs."); Ortino v. Sch. Bd. of Collier County, 2:14-CV-693-FTM-29CM, 2015 WL 1579460, at *2 (M.D. Fla. Apr. 9, 2015) ("'The FCA prohibits fraud against government programs'" and allows either the United States government or private citizens to

file civil lawsuits to enforce its provisions."); <u>Cf. United States ex rel. Paredes v. Res-Care, Inc.</u>, 02-23460-CIV, 2006 WL 8432596, at *7 (S.D. Fla. Feb. 9, 2006) ("Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' or persons who come forward with evidence that their employer is committing fraud <u>upon the Government</u>, from retaliation by their employer." (emphasis added)).

"To encourage private citizens with knowledge of FCA violations to come forward," the federal government protects employees who take lawful acts in furtherance of an action under the FCA (which requires the showing of a distinction possibility of litigation under the FCA or a report to the federal government)[3] or those employees who take affirmative acts to stop a violation of the FCA.  <u>Ortino</u>, 2015 WL 1579460, at *2 (citing 31 U.S.C. § 3730(h)).

In order to state a claim under the retaliation provision, the plaintiff must establish that he or she engaged in protected activity.  To engage in protected activity under the FCA, at a minimum, there must have been at least some federal claim made by Defendant and an action by Plaintiffs to stop a violation of the FCA or in furtherance of an FCA action.  <u>United States ex rel. Aquino v. Univ. of Miami</u>, 250 F. Supp. 3d 1319, 1335 (S.D. Fla. 2017) ("[T]o plead an FCA retaliation claim, a plaintiff must allege that (1) she engaged in lawful acts in furtherance of an FCA action or endeavored to prevent at least one violation of the FCA . . . .").  The alleged protected activity must address fraudulent claims for federal funds and not

---

[3] <u>See</u> <u>United States ex rel. Paredes v. Res-Care, Inc.</u>, 02-23460-CIV, 2006 WL 8432596, at *7 (S.D. Fla. Feb. 9, 2006) (citing <u>Childree v. UAP/GA Ag. Chem. Inc.</u>, 92 F.3d 1140, 1146 (11th Cir. 1996)).

simply general misconduct. See Hale v. Moreland Altobelli Associates, Inc., 1:14-CV-00065-WCO, 2014 WL 12235187, at *6 (N.D. Ga. Sept. 4, 2014).

Indeed, there must be some nexus to the FCA. U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). "Mere reporting of wrongdoing to supervisors, without alleging that the wrongdoing constitutes fraud on the government, does not qualify as protected conduct." Ortino, 2015 WL 1579460, at *2; see also Hale, 2014 WL 12235187, at *4 (holding that "no matter whether the protected activity is characterized as 'in furtherance of an action under this section' or 'other efforts to stop 1 or more violations of this subchapter,' a plaintiff must always show that he was opposing or investigating 'attempts to defraud the United States.'").

In this case, however, Plaintiffs do not allege that Defendant made any claim, statement, or record to obtain federal funds in the operation of its animal services department, which enforces County ordinances related to domestic animals in the County. (See Proposed Second Amended Complaint, which is attached to the Motion to Amend, ¶ 9). More importantly, in their allegation of their protected activity in the Amended Complaint, Plaintiffs do not allege any facts to show that they reported that there was any false claim that had been made or was going to be made to the federal government, that there was a distinct possibility of litigation under the FCA or a report to the federal government, that they opposed any violation of the FCA, or that they reported any attempt to defraud the federal government. (Id. ¶¶ 20, 21, 25, 27). There simply is no connection to the federal government or the FCA, nor is there one pled in the Amended Complaint or Plaintiffs' proposed second amended

complaint.[4]

Despite explaining this lack of merit on February 26, 2018, Plaintiffs are persisting with this frivolous claim by now seeking to amend the FCA claim. This amendment, however, does not remedy the deficiency in the claim. After taking six weeks to draft this amendment, it makes very few changes to the Amended Complaint. It updates the jurisdictional and venue allegations in paragraphs 7 and 8 and adds a description of the County's animal services department in paragraph 9. Other than changes to paragraph references, it does not make any other changes to the factual allegations or the First Amendment claims.

In Count III, the FCA claim, the proposed amended complaint only adds one paragraph (paragraph 70), which provides: "In 2015/2016, the Defendant received approximately $153,706,847 in grants from federal and state agencies, of which approximately $1.3 million was appropriated to Public Safety (which includes animal services programs)." (Proposed Second Am. Compl. ¶ 70). This allegation, however, does not aver what amount of federal funds, if any, were received. Instead, it indicates the combined federal and state funds received

---

[4] In their Motion to Amend, Plaintiffs assert that they have pled they engage in protected activity because they alleged in paragraph 27 that Defendant "was unaware of or condoning fraud committed against it that resulted in public monies being fraudulently obtained by private parties through false claims." (Motion to Amend at 9). This statement is wholly insufficient. First, it is a conclusory statement that does not plead any facts and does not raise this claim above the speculative level. Additionally, it does not allege that federal funds have been fraudulently obtained. (Proposed Second Am. Compl. ¶ 27). Indeed, based on paragraph 21, which alleges that the fraud was committed on Defendant, not the federal government, Plaintiffs concede that federal funds have not been implicated. (Id. ¶ 21). Moreover, according to Plaintiffs in paragraph 27, the alleged fraud appears to have been committed by private parties (not the County or its employees) and Defendant either was unaware of it or condoned it. (Id. ¶ 27). This conclusory allegation, which does not disclose any facts, including whether Defendant was even aware of the alleged fraud by unnamed "private parties," cannot be sufficient to establish a plausible claim under the FCA.

by the County.  It also does not set forth any facts establishing that the County's animal services department received any federal funds.  Other than the simple conclusion that public safety includes animal services, this allegation, nor any other allegation in the proposed complaint, sets forth what federal funds would have been provided for animal control.  This allegation certainly does not indicate that there was any false claim made for federal funds or that such a claim was reported by Plaintiffs.

At best, this allegation suggests that the County, as a whole, received some federal funding, which is not sufficient to state a retaliation claim under the FCA.  See McCrary v. Knox County, Ind., 200 F. Supp. 3d 782, 793 (S.D. Ind. Aug. 4, 2016) (concluding that a former county employee could not assert a retaliation claim against the county under the FCA merely because the county received some federal funding and the employee had complained about a misuse of funds).[5]

In paragraph 71, Plaintiffs seek to add the underlined statements to the Amended Complaint:

> The Plaintiffs believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that false claims were being committed by virtue of Defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed, all of which could have impacted federal funds by virtue of Lee County obtaining such federal funds and then not using them for their proper purpose, in addition to the federal funds being misappropriated.

(Proposed Second Am. Compl. ¶ 71).  In addition to being a baseless, scandalous allegation,

---

[5] In McCrary, the court specifically held that "merely alleging that Knox County receives some federal funding – without tying that funding to grading the county road [the plaintiff's complaint about misuse of funds] and a subsequent claim – is insufficient to allege retaliation under the FCA."  200 F. Supp. 3d at 793.

this paragraph provides no facts.  The additional language itself ("could have impacted") shows that Plaintiffs are merely relying on speculation for this claim.  While making the allegations of "illegal bid-rigging," "best-rate fraud," and "misappropriation," Plaintiffs do not provide any facts to support these scurrilous assertions.  They do not even explain what was involved in the "illegal bid-rigging," "best-rate fraud," or "misappropriation," and they certainly do not provide any facts connecting this conduct to a claim to the federal government.[6]  Instead, they irresponsibly use these labels and formulaic recitations instead of pleading facts to support this frivolous claim.[7]

---

[6] In the Motion to Amend, Plaintiffs contend that they have pled that "they complained to the Defendant's administration about the illegal misuse of federal funding." (Motion to Amend at 10).  There is no such allegation in the Amended Complaint or proposed Second Amended Complaint.  (See, e.g., Proposed Second Am. Compl. ¶ 71).  Even if Plaintiffs had made this allegation, it is not sufficient to save this claim from dismissal.  Bell v. Dean, 2:09-CV-1082-WKW(WO), 2010 WL 1856086, at *4 (M.D. Ala. May 4, 2010) ("A violation of the FCA cannot be based on the mere *misuse* of federal funds, but requires some nexus to a false *claim* made to the United States.").

[7] In the Motion to Amend, Plaintiffs alleges that there is no difference between their allegations and the alleged protected activity in U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010).  Yet, this assertion is wholly unfounded.  Sanchez could not be more distinguishable from Plaintiffs' claim.  In Sanchez, the plaintiff alleged that the defendant submitted false bills to Medicare for services, made false certifications under the Medicare regulations, and failed to collect co-payments required by Medicare.  United States ex rel. Sanchez v. Lymphatx, Inc., 07-80900-CIV, 2009 WL 10697669, at *1 (S.D. Fla. July 24, 2009), aff'd in part, rev'd in part and remanded sub nom. U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300 (11th Cir. 2010).  Plaintiffs, here, makes no such allegation of any federal claim for payment made by the County.  Additionally, in Sanchez, the plaintiff was the office manager at a company who billed and received payments from Medicare.  Id.  She alleged that, while she was the office manager, she complained about the company's unlawful actions and "warned them that they were 'incurring significant criminal and civil liability.'"  Sanchez, 596 F.3d at 1304.  There are no similar allegations in Plaintiffs' Amended Complaint or its proposed amendment regarding Plaintiffs' purported protected activity.  Instead, Plaintiffs seek to state a claim for retaliation under the FCA based on Plaintiffs' complaint that Defendant, not the federal government, was being defrauded by unnamed "private parties."  (Proposed

15

Instead of supporting Plaintiffs' FCA claim, their allegations specifically belie it.  In the proposed second amended complaint, as well as the Amended Complaint, Plaintiffs specifically plead they did not complain about fraud against the federal government, but the County itself.  (Proposed Second Am. Compl. ¶¶ 21, 25, 27).  They specifically allege that they complained about "false claims against the Defendant by virtue of Defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon the Defendant." (Id. ¶ 21 (emphasis added); see also id. ¶ 25).  They also allege that they disclosed that Defendant "was unaware of or condoning fraud committed against it that resulted in public monies being fraudulently obtained by private parties through false claims."  (Id. ¶ 27 (emphasis added)).

They do not allege any facts where they complained, at any time, that Defendant had submitted a false claim to the federal government or where they opposed the submission of a false claim to the federal government.  Thus, by Plaintiffs' own admissions, they did not engage in protected activity under the False Claims Act.  See McCrary, 200 F. Supp. 3d at 794 (finding that alleged fraud against a local government is not actionable under the FCA and complaints about that alleged fraud by a former employee are not protected by the FCA retaliation provision).

As set forth above, the proposed amendment contains mere labels and legal conclusions

―――――――――――――

Second Am. Compl. ¶¶ 21, 27). There is no legal basis to bring this claim under the FCA.

as opposed to factual allegations to state a plausible claim for a violation of the FCA. Plaintiffs

do not plead facts, such as the dates and times of events or the identity of purported actors, but

plead legal conclusions and vague allegations, such as "Plaintiffs' conduct, including but not

limited to investigating the false claims against the Defendant by virtue of Defendant's

employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon

the Defendant, and also raising complaints concerning same and bearing witness to violations

of same, potential testimony concerning, potential initiation of and assistance in an action filed

or potentially to be filed pertaining to the FCA, is all protected conduct under the FCA."

(Proposed Second Am. Compl. ¶ 80). This is precisely the type of allegation that the courts

have found to be in violation of Rule 8. It states no facts, just a formulaic recitation of law.

Plaintiffs should not be permitted to amend the Amended Complaint to make these allegations,

which do not even satisfy the minimal pleading standard under Rule 8. Accordingly, it would

be futile to allow this amendment as the FCA claim must be dismissed as a matter of law.

## **CONCLUSION**

As demonstrated supra, Defendant made numerous attempts to try to avoid unnecessary

motion practice in this Court. Instead of filing a motion to dismiss in the first instance, it

explained the deficiencies to Plaintiffs and sought to obtain a dismissal of these frivolous claim.

Plaintiffs indicated that they would dismiss the FFCA claim and were waiting on confirmation

regarding the FCA claim. Defendant continued to follow-up to avoid additional motion

practice in this Court, and Plaintiffs promised that their motion was forthcoming. Instead of

dismissing the FCA claim, however, Plaintiffs ultimately decided to persist in this frivolous

FCA claim. They have pled no facts to support this claim, despite taking six weeks to draft an

amended complaint.  The proposed amended complaint only uses labels and formulaic recitations to attempt to state a claim under the FCA.  As Defendant explained to Plaintiffs on February 26, 2018, this is wholly insufficient.  By continuing to persist in this baseless claim, Plaintiffs have unnecessary multiplied these proceedings.

The deadline for amending pleadings has passed and Plaintiffs failed to suggest or even address good cause for failure to meet the deadline in the scheduling order.  Allowing Plaintiffs to amend the FCA claim, instead of dismiss it, particularly in light of the undisputable lack of merit of this claim, would undermine the fair and efficient resolution of this case as well as waste this Court's resources.

WHEREFORE, for all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Opposed Motion to Amend Complaint to the extent that it seeks to amend, instead of dismiss, the FCA claim and award Defendant all other appropriate relief. Defendant does not oppose the dismissal of the FFCA claim, as it is a frivolous claim.

DATED this 15th day of May, 2018.

Respectfully submitted,

*s/Sacha Dyson*
GREGORY A. HEARING
Florida Bar No.: 817790
SACHA DYSON
Florida Bar No.: 509191
THOMPSON, SIZEMORE, GONZALEZ
& HEARING, P.A.
201 N. Franklin Street, Suite 1600
Post Office Box 639 (33601)
Tampa, Florida, 33602
Tel:  (813) 273-0050
Fax:  (813) 273-0072
Attorneys for Defendant

18

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this <u>15th</u> day of May, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Benjamin H. Yormak, Esq., counsel for Plaintiffs.


<u>*s/ Sacha Dyson*</u>
Attorney