## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **ANTHONY BACKHURST**, an individual, and **ANGEL CRUZ**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**LEE COUNTY**, a political subdivision of the State of Florida,<br><br>Defendant. | **CIVIL ACTION**<br><br>Case No.  2:18-cv-061<br><br>**Judge: Unassigned**<br><br>**Mag. Judge:  Carol Mirando** |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

**NOW COME** the Plaintiffs, **ANTHONY BACKHURST** and **ANGEL CRUZ** (collectively "Plaintiffs"), by and through undersigned counsel, and file this Response to Defendant's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 35), and states as follows:

## INTRODUCTION & FACTUAL SUMMARY[1]

Given its druthers, the Defendant would like nothing more than to never have to face the claims made by the Plaintiffs. But when two Plaintiffs (who were not the subject of any discipline whatsoever) are the only employees terminated just a few short weeks after they engaged in statutorily and constitutionally protected activity, more than just a specter of retaliation is present. As discussed herein, the Defendant cannot steal a quickie victory and rob the Plaintiffs of their right to litigate their likely meritorious claims in the same manner its robbed the Plaintiffs of their public employment.

---

[1]      The facts herein are taken from Plaintiff's Amended Complaint (Doc. 34) as they must be considered as true to determine the instant Motion to Dismiss (Doc. 35). *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (noting that when considering a motion to dismiss for failure to state a claim, courts must accept all factual allegations in the complaint as true and take them in the light most favorable to plaintiff).

On January 26, 2018, the Defendant removed this case to federal court from the Circuit Court of the Twentieth Judicial Circuit in Lee County, Florida. Doc. 1. The Plaintiffs, former employees of the Defendant, have brought this action under 42 U.S.C. §1983 (§1983) for violation of the First Amendment of the United States Constitution, 31 U.S.C. §3729 (False Claims Act), and F.S. §112.3187 for violation of Florida's Public Whistleblowers Act (FPWA). (Doc. 1 at ¶34). In its Order granting the Plaintiffs' Motion to Amend (Doc. 33), the Court aptly summarized the relevant facts as follows:

> The Amended Complaint alleges Plaintiffs Anthony Backhurst ("Backhurst") and Angel Cruz ("Cruz") were previously employed with Lee County's animal control services. Doc. 2 ¶¶ 9-10. Plaintiffs claim that in 2017, Backhurst testified at the trial of a lawsuit filed by other former employees of Lee County asserting whistleblower claims. Id. ¶¶ 11, 15. Backhurst's supervisors allegedly disapproved of his "highly critical" testimony. Id. ¶16. On April 24, 2017, Backhurst sent a complaint letter to Lee County's Chief Executive detailing "violations of law, rule and/or regulation, in addition to gross mismanagement, malfeasance and misfeasance" of Lee County. Id. ¶ 19. His grievances included Lee County "illegally altering public records, allowing a grossly unsafe workplace, allowing animal cruelty, a gross waste of public funds by . . . overpaying for expensive equipment," and false claims against Lee County by Lee County's employees engaging in "illegal bid-rigging and allowing best-rate fraud to be committed upon" Lee County. Id. ¶ 20.
>
> On June 2, 2017, Backhurst and Cruz were interviewed by an investigator in relation to Backhurst's complaints. Id. ¶ 22. During the interviews, Backhurst and Cruz allegedly disclosed that Lee County was "wasting taxpayer money," "allowing animal cruelty," and "condoning fraud committed against it that resulted in public monies being fraudulently obtained by private parties through false claims[.]" Id. ¶26. Plaintiffs allege Lee County terminated them on June 28, 2017, following the investigation. Id. ¶ 37. Plaintiffs allege Lee County violated the FCA and FFCA by retaliating against Backhurst and Cruz for disclosing their suspicions that false claims were being committed against Lee County. Id. ¶¶ 67-89.

By way of their Second Amended Complaint, the Plaintiffs removed claims under the Florida False Claims Act (FFCA) and added detail regarding the alleged federal funds at issue. The Second Amended Complaint adds that "[i]n 2015/2016, the Defendant received approximately

2

$153,706,847 in grants from federal and state agencies, of which approximately $1.3 million was appropriated to Public Safety (which includes animal services programs)." Doc. 34, ¶70.

The Plaintiffs' allegations make clear that the Defendant retaliated against the Plaintiffs after their engagement in statutorily and constitutionally protected activity. Indeed, at least in so far as the FCA retaliations claims go, the Court has already held the Second Amended Complaint is legally sufficient. Apparently undeterred, the Defendant again challenges the viability of the FCA retaliation count and in so doing makes the same arguments the Court already rejected when the Defendant challenged the Plaintiffs' Motion to Amend. Furthermore, by attempting to argue Plaintiff Backhurst's sworn testimony given subject to a subpoena is not protected under the First Amendment, the Defendant is squarely met by the buzz-saw of the U.S. Supreme Court's holding in *Lane v. Franks*, which held that the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities. *Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2372 (2014). In regard to the balance of the Plaintiffs' First Amendment claims, the Defendant basically asks the Court to apply a Rule 9 pleading standard where no such standard is required under Rule 8. The Plaintiffs have alleged the subject matter of their grievances and the manner in which those grievances were delivered, which is sufficient at the pleading stage. The Defendant also questions whether the Plaintiffs' have spoken on matters of public concern. But, as discussed herein, its arguments are without merit. Finally, the Defendant makes the mistake of arguing that an exhaustion of remedies under the PWA is subject to a Rule 12(b)(1) analysis. The Eleventh Circuit has weighed in on this issue and held that challenges to the exhaustion of administrative remedies are subject to a Rule 12(b)(6) analysis, and under that standard, exhaustion of administrative remedies may be generally pled.

3

The Defendant's Motion ignores both the plain allegations in the Second Amended Complaint and controlling case law. Instead, the Defendant either misapprehends or misrepresents the factual allegations, attempting to shoehorn this case into inapposite case law. The allegations of the Second Amended Complaint are more than sufficient to plausibly state entitlement to relief and, for the reasons discussed in greater detail *infra*, the Defendant's Motion is due to be denied.

## MEMORANDUM OF LAW

### I.  Legal Standard.

In deciding a motion to dismiss, the Court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000). In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. *Christopher v Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). However, dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561- 563, S. Ct. 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

A complaint should not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001 (en banc)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (U.S. 2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167

L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. When there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal* at 1950.

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Bell Atlantic* at 555; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1268 (11th Cir. 2009) (*citing Ascroft v. Iqbal*, ----- U.S.----, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868 (2009). Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Simplexgrinnell, L.P. v. Ghiran*, 2007 WL 2480352 (M.D. Fla. August 29, 2007) (*citing Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Brown v. Crawford County, Georgia*, 960 F.2d 1002, 1009-1010 (11th Cir. 1992). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.    The Court has Already Held that the Plaintiffs Have Properly Pled a Cause of Action for FCA Retaliation.

When the Plaintiffs sought leave to amend, the Defendant opposed and argued that the FCA claim failed because Plaintiffs did not specifically allege that the Defendant made any claim to obtain federal funds, and there "is no connection to the federal government or the FCA" in the

proposed amendment. Doc. 29. at 12-13. Further, the Defendant asserted that at best, the amended

retaliation claim "suggests that the County, as a whole, received some federal funding, which is

not sufficient to state a retaliation claim under the FCA." *Id.* at 14 (*citing McCrary v. Knox County,*

*Ind.*, 200 F. Supp. 3d 782, 793 (S.D. Ind. Aug. 4, 2016)). The Court disagreed.

In granting the Plaintiffs' Motion to Amend, the Court conducted a detailed analysis of the

controlling case law and the factual allegations of the Second Amended Complaint. As

summarized by the Court:

> To state an FCA retaliation claim under Section 3730(h), however, a complaint
> must only allege: (1) the plaintiff engaged in "protected activity" as defined by the
> FCA; (2) the plaintiff's employer knew of the protected activity; and (3) the
> employer took adverse action against the plaintiff in response to the protected
> activity. *Hale v. Moreland Altobelli Associates, Inc.*, No. 1:14-cv-00065-WCO,
> 2014 WL 12235187, at *3 (N.D. Ga. Sept. 4, 2014) (*citing Mann v. Heckler & Koch*
> *Defense, Inc.*, 630 F.3d 338, 342 (4th Cir. 2010)). The FCA defines protected
> activity as "lawful acts done by the employee . . . in furtherance of an action under
> this section or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. §
> 3730(h)(1)… Unlike a claim under Section 3729, a retaliation claim only requires
> the plaintiff to plead facts "sufficient to show that the defendant retaliated against
> the plaintiff for attempting to stop an actual or reasonably suspected violation of
> Section 3729 of the [FCA]" but the plaintiff "need not allege with particularity the
> fraud the plaintiff purportedly reported to the defendant." *U.S. ex rel. Ashmore*
> *v. 1st Financial, Inc.*, No. 8:16-cv-1387-T-23JSS, 2018 WL 310032, at *2 (M.D.
> Fla. Jan. 5, 2018) (*citing Sanchez*, 596 F.3d at 1304)). Because a retaliation claim
> does not depend necessarily on allegations of fraud, a complaint must only state "a
> short and plain statement of the claim showing that the [plaintiff] is entitled to
> relief[.]" Fed. R. Civ. P. 8(a); *Sanchez*, 596 F.3d at 1304.

But the Defendant's Motion continues to misapprehend that FCA retaliation claims are not

subject to the Rule 9 pleading standard required in *qui tam* actions but rather are subject to Rule

8's short, plain statement requirement, which standard is met here. Indeed, this Court decided a

very similar case in *Ashmore* and rejected the same argument the Defendant tries to put forth for a

second time in this case:

> In a case decided by another court in this district, *Ashmore*, the relator filed a
> complaint against the defendant, 1st Financial Inc., alleging violations of Section

3729 of the FCA and a retaliation claim under Section 3730(h). 2018 WL 310032, at *1-2. The relator alleged the defendant "lent money to prospective mortgagors in violation of unspecified 'underwriting standards and guidelines'" and sold mortgages to third-party investors, who then sold the loans to Fannie Mae and Freddie Mac; and "[a]lthough the complaint contain[ed] no allegation that a mortgagor defaulted . . . the relator conclude[d] that the United States 'sustained reporting the purported fraud to a supervisor." *Id.* The defendant moved to dismiss the complaint under Rules 9(b) and 12(b)(6), and the court granted the motion as to the Section 3729 claim but denied it as to the retaliation claim. *Id.* at *2-3. In dismissing the Section 3729 claim, the court found that "no facts specifically connect[ed] the loan[s] to the United States" other than "unsubstantiated allegation[s]" that Fannie Mae and Freddie Mac purchased the loans. *Id.* at *1. The court also noted that Fannie Mae and Freddie Mac are private corporations, although chartered by Congress, and liability under the FCA requires the involvement of the federal government. *Id.* at *2. The court declined to dismiss the retaliation claim, however, stating: "Because the relator alleges generally—albeit confusingly—that he reported to a supervisor suspected fraud against the United States and that 1st Financial consequently fired him, the relator states a claim for retaliation." *Id.* The court noted that a retaliation claim requires only well- pleaded facts sufficient to show the defendant retaliated against the plaintiff for attempting to stop "an actual *or reasonably suspected* violation of Section 3279[.]" *Id.* (emphasis added by Court).

In rejecting the Defendant's argument, the Court made clear that:

Like in *Ashmore*, Plaintiffs allege "generally" that they reported to a third-party investigator and Lee County's Chief Executive what they believed constituted fraud against the federal government committed by Lee County, and that Lee County terminated them in response. *See* 2018 WL 310032, at *2; Doc. 26-1 ¶¶ 20, 68-73, 77-81. Further, similar to *Ashmore*, although Plaintiffs' description of the fraud and the connection to the federal government is confusing and non-specific, Plaintiffs allege facts to show they "reasonably suspected" Lee County was violating the FCA. See 2018 WL 310032, at *2; Doc. 26-1 ¶¶ 70-72. Although Plaintiffs' factual allegations would likely not be sufficient to state a Section 3729 claim that Lee County actually submitted false claims to the United States, Plaintiffs were not required to allege with particularity the fraud committed by Lee County in their retaliation claim. *See* 2018 WL 310032, at *2; *Sanchez,* 596 F.3d at 1304 (plaintiff stated claim for FCA retaliation despite failing to state a claim under Section 3729). Thus, the Court finds Plaintiffs' retaliation claim in the Second Amended Complaint would not "necessarily fail" and the amendment is not futile. *See St. Charles Foods, Inc.,* 198 F.3d at 822.

Judge Mirando's analysis was spot on -- the Plaintiffs' Second Amended Complaint was not futile then and it is not subject to dismissal now. As such, the Defendant's Motion is due to be

denied.

**III.    The Plaintiffs' First Amendment Claims are Properly Pled.**

  **a.    *Lane* is On Point as to Plaintiff Backhurst's Subpoenaed, Sworn Testimony.**

The Defendant's challenge to Plaintiff Backhurst's First Amendment retaliation claim runs about as squarely into binding precedent as could be possible. Seemingly aware of this, the Defendant's Motion convolutedly and confusingly attempts to distinguish the instant set of facts from *Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2372 (2014). Its' attempt fails.

In *Lane*, a public employee, Edward Lane, was fired after testifying under oath before a grand jury and twice at a criminal trial pursuant to subpoena. *Id*. at 2375. It was undisputed that Lane's testimony was not given pursuant to his official duties. *Id*. at 2378 n.4. The Supreme Court held that the First Amendment protected Lane's speech because "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment." *Id*. at 2378. Lane thus clarified that *Garcetti* divests speech of First Amendment protection when it is uttered pursuant to a public employee's official duties -- not just if it merely concerns or relates to those duties. *Id*. at 2379. The *Lane* plaintiff spoke pursuant to an independent duty, binding all private citizens: to testify truthfully in judicial proceedings. *Id*. at 2379. The fact that Lane's testimony concerned information acquired in his official capacity did not change the source of his obligation to testify. *Id*. Instead, *Lane* asks the Court to determine whether the employee spoke pursuant to his "ordinary job duties." 134 S. Ct. at 2378. If the speech is part of his ordinary job duties, then he is speaking as an employee; if it is not, then he is speaking as a citizen.

The allegations in the Second Amended Complaint are almost a mirror image of the facts in

*Lane*. Plaintiff Backhurst was under subpoena to testify and did testify under oath and against the Defendant, just like in *Lane*. Doc. 34, ¶¶15-17. Indeed, per *Lane*, Plaintiff Backhurst spoke pursuant to an independent duty, binding all private citizens: to testify truthfully in judicial proceedings. Nowhere is there any indication in the Complaint that testifying under subpoena in such a case was part of Backhurst's ordinary job duties. And because *Lane* holds that a public employer violates an employee's First Amendment rights by firing him because of his truthful sworn testimony that was compelled by subpoena and occurred outside the scope of his ordinary job responsibilities, Plaintiff Backhurst's his speech under oath and subject to subpoena appropriately garners First Amendment protection and the Defendant's Motion is therefore due to be denied. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1147 (11th Cir. 2017)(*citing Lane* at 2378).

The Defendant's next challenge, a suggestion that a causal connection must be pled, is similarly without merit. The Defendant overlooks or ignores that a complaint asserting employment discrimination need not contain specific facts establishing a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002). The Supreme Court explained that the burden-shifting analysis in employment discrimination claims is an evidentiary standard rather than a pleading standard. *Id.* at 510, 122 S. Ct. at 997. Stated differently, the *prima facie* case relates to the employee's burden of presenting evidence that raises an inference of discrimination. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Swierkiewicz* at 511. As the Supreme Court explained in *Swierkiewicz*:

> … it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985) ("The *McDonnell Douglas* test is inapplicable

where the plaintiff presents direct evidence of discrimination"). Under the Second Circuit's heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a prima facie case of discrimination, even though discovery might uncover such direct evidence. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

Moreover, the precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 57 L. Ed. 2d 957, 98 S. Ct. 2943 (1978); *see also McDonnell Douglas, supra,* at 802, n. 13 ("The specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations"); *Teamsters v. United States*, 431 U.S. 324, 358, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) (noting that this Court "did not purport to create an inflexible formulation" for a *prima facie* case); *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 927 (CA8 1993) ("To measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate"). Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required *prima facie* case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.

And recently, the Eleventh circuit has reaffirmed that *McDonnell Douglas* is an evidentiary standard, not a pleading standard. *Andrews v. City of Hartford*, 700 F. App'x 924, 926 (11th Cir. 2017). The Supreme Court's later decision in *Twombly* did not alter this distinction. *Id.* Consequently, the Defendant's argument that a causal connection must be pled is wholly without merit and its Motion is due to be denied.

### b. Plaintiffs' Petitioning for Redress of Grievances Is Protected Under the First Amendment.

The First Amendment allegations do not end there, however as the Plaintiffs both that the Defendant violated their First Amendment rights under the Petition Clause by retaliating against them after they petitioned for redress of their grievances. The Defendant essentially avers that the Second Amended Complaint fails to allege a First Amendment retaliation claim based on the Petition Clause because the Plaintiffs' petitioning did not focus on the public at large. The

Defendant's position is incorrect.

### i. The Petition Clause Protects the Right of Individuals to Petition the Government for Redress of Grievances.

The right to petition the Government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017). A petition may consist of a "personal grievance addressed to the government" and may be an oral grievance. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 394, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011); *see Mack v. Warden, Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016). The right to petition "extends to all departments of the Government," *California Motor Transport Company v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), including police departments, *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000); *see Garcia v. Montgomery Cnty.*, 145 F. Supp. 3d 492, 514 (D. Maryland 2015) (the right of private citizens to petition for the redress of grievances extends particular to matters of public concern such as the unlawful actions of police officers). It "allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ." *Guarnieri*. at 2495.

The right of free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right. *Floyd v. Cty. of Miami-Dade*, No. 17-CV-21709, 2017 U.S. Dist. LEXIS 76631, at *9 (S.D. Fla. May 18, 2017). Therefore, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001). Allegations that a government employer violated an employee's right to petition must be evaluated under the same standard as Speech Clause claims: in order to be actionable, the public employee must petition the government as a citizen on a matter of public concern. *Guarnieri*, at 2500. But courts should not

presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims. *See id., at 2495*. Interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right. *Id.* A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns. *Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 896-897* (1984).

The government may not misuse its role as employer unduly to distort this deliberative process. *See Garcetti, 547 U.S., at 419, 126 S. Ct. 1951, 164 L. Ed. 2d 689*. Public employees are "the members of a community most likely to have informed and definite opinions" about a wide range of matters related, directly or indirectly, to their employment. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois, 391 U.S. 563, 572, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811* (1968). Just as the public has a right to hear the views of public employees, the public has a right to the benefit of those employees' participation in petitioning activity. Petitions may "allow the public airing of disputed facts" and "promote the evolution of the law by supporting the development of legal theories," *BE&K Constr. Co. v. NLRB, 536 U.S. 516, 532, 122 S. Ct. 2390, 2399* (2002) (internal quotation marks omitted), and these and other benefits may not accrue if one class of knowledgeable and motivated citizens is prevented from engaging in petitioning activity. When a public employee seeks to participate, as a citizen, in the process of deliberative democracy, either through speech or petition, "it is necessary to regard the [employee] as the member of the general public he seeks to be." *Pickering, supra*, at 574.[2]

---

[2]     The right of petition applies with equal force to a person's right to seek redress from <u>all</u> branches of government. *Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S. Ct. 609, 611* (1972). The right of access to the courts is indeed but one aspect of the right of petition. *Id.* The Supreme Court has found that this right of access "governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive)." *Id.*

### ii.  First Amendment Legal Framework.

Time and again, the Supreme Court has reiterated that "[s]peech by citizens on public concerns lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane* at 2377 (*quoting Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). And "[t]his remains true when speech concerns information related to or learned through public employment." *Id.* For it is well established that the acceptance of public employment does not require the employee to relinquish their constitutional rights, especially those afforded under the First Amendment. *Id.*

But a public employee's right to disseminate information is not absolute. Instead, the Supreme Court has "acknowledged the government's countervailing interest in controlling the operation of its workplaces" because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* Consequently, "[t]he problem in any case is to arrive at a balance between the interests of the [government employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering* at 568.

The Supreme Court first announced "some of the general lines along which an analysis of the[se] controlling interests should run" in *Pickering,* 391 U.S. at 569, 88 S.Ct. 1731. From these general lines, two inquiries emerged to guide interpretation of the First Amendment protection provided to a public employee's speech. The first inquiry asks whether the employee spoke on a matter of public concern. *Garcetti,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (*citing Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). If not, then the employee is not entitled to First

Amendment protection for his or her employer's reaction to the speech. *Id.* (*citing Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). But if the answer to this first inquiry is yes, then the Court is alerted to the possibility of a First Amendment claim. The Court must then proceed to the second inquiry of the *Pickering* framework, and the relevant question becomes whether the defendant government entity had an adequate justification for treating the plaintiff employee differently from any other member of the general public. *Id.* (*citing Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

Nearly forty years after the *Pickering* framework first emerged, the Supreme Court modified the first inquiry in *Garcetti*, 547 U.S. 410, 126 S.Ct. 1951, 164 L. Ed. 2d 689. In doing so, the Supreme Court emphasized that courts must consider not only whether the plaintiff was speaking on a matter of public concern, but also whether the plaintiff was speaking as a private citizen or as a public employee. *Id.* at 418, 126 S.Ct. 1951. As the *Garcetti* Court explained, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S.Ct. 1951. After this modification, the first inquiry of the *Pickering* framework now asks "whether the employee spoke as a citizen on a matter of public concern." *Id.* at 418, 126 S.Ct. 1951; *see also D'Angelo v. Sch. Bd. of Polk Cnty., Fla.*, 497 F.3d 1203, 1209 (11th Cir. 2007) (collecting cases that note *Garcetti* significantly modified the first inquiry of the *Pickering* framework).

Most recently, the Supreme Court clarified its holding in *Garcetti*, finding that courts were reading the case too broadly. *Lane*, at 2379. In *Lane*, the Supreme Court turned down reasoning "that, because [a plaintiff] learned of the subject matter of his testimony in the course of his employment with [the defendant government entity], *Garcetti* requires that his testimony be treated

as the speech of an employee rather than that of a citizen." *Id.* (citation omitted). In doing so, the Supreme Court noted that "*Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Id.* The Court then went on to clarify that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* Rather, "[t]he critical question under *Garcetti* is whether the speech[3] at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.*

### iii. The Second Amended Complaint Supports That the Plaintiffs Petitioned as Private Citizens.

With this framework in mind, the Court must first determine whether the Plaintiffs' petitions were as private citizens or as public employees within the scope of their duties. *Id.* At this stage, the only issue before the Court then is whether the Plaintiffs petitioned the Defendant on a matter of public concern, rather than a private employment issue.

Nowhere in the Second Amended Complaint does it appear that Plaintiffs' ordinary job duties included reporting or grieving the topics discussed at ¶21 of the Second Amended Complaint. And while the Defendant is correct in part that Plaintiffs' petitions did mention their inability to safely discharge their duties, that was by no means the sole focus of the Plaintiffs' petitions. Throughout their Second Amended Complaint (and specifically in ¶21 of their Second Amended Complaint), the Plaintiffs detail the matters of obvious public concern they brought a petition for, which are plainly outside of their ordinary duties as supervisors of field operations in the Defendant's animal control department. The Defendant can hardly claim with a straight face that Plaintiffs' grievances regarding the following were somehow remotely part of the Plaintiffs' ordinary job duties:

---

[3]        Or in this case, a petition.

- The Defendant illegally altering public records;

- The Defendant allowing animal cruelty;

- The Defendant committing a gross waste of public funds by the Defendant overpaying for expensive equipment, and;

- The Defendant allowing false claims against the Defendant by virtue of Defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon the Defendant.

Indeed, none of those are personal grievances. And to confirm the same, the Second Amended Complaint plainly alleges that "[f]iling such grievances and reporting this sort of wrongdoing was *not* part of the Plaintiffs' job duties." *Id.*, at ¶28. Each Plaintiff "proffered both their grievances but also ideas to improve the Defendant, a public body, and seek change for the betterment of the general public." *Id.*, ¶31.

Nowhere on the face of the Second Amended Complaint is there any language to the contrary, and thus there is no basis upon which to accept the Defendant's unsupported proclamation that the Plaintiffs' petitions were part of their ordinary job duties. The fact that Plaintiffs included themselves and their inability to safely discharge their duties does not moot their overall objective. It is clear that the Plaintiffs were interested in bringing meaningful change for the general public, and not just themselves. And political or governmental change for the general public is undoubtedly a private petition on a matter of public concern. *See Lane,* at 2380 (describing how a matter of public concern includes "any matter of political, social, or other concern to the community"). Thus, at this stage in the litigation, the Court ought to conclude that Plaintiffs' petitioning clearly qualify as citizen — rather than employee — petitioning.

### iv. The Second Amended Complaint Supports that the Plaintiffs Petitioned on Matters of Public Concern.

Next, the Court must consider whether Plaintiffs' petitions as citizens was on matters of public concern- there is no doubt they were. The Supreme Court has routinely held that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425, 126 S.Ct. 1951; *see also Lane*, at 2380 ("The content of Lane's testimony — corruption in a public program and misuse of state funds — obviously involves a matter of significant public concern."). Based on this clear Supreme Court precedent, there is little doubt that the content of Plaintiffs' petitions — the Defendant illegally altering public records, allowing animal cruelty, allowing a gross waste of public funds by the Defendant overpaying for expensive equipment, false claims against the Defendant by virtue of Defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon the Defendant, failing to adhere to a court order and the Defendant's allowing various violations of Title VII of the Civil Rights Act of 1964, including condoning public employees giving Nazi-salutes in public — were on matters of public concern.

### v. The Second Amended Complaint Does Not Show Any Adequate Justification For Defendant Treating Plaintiffs Differently Than Members of the General Public.

Having demonstrated that the Plaintiffs petitioned as private citizens on matters of public concern, the Court must proceed to the second inquiry of the *Pickering* framework: whether the Defendant had an adequate justification for treating Plaintiffs differently from any other member of the general public. *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951. Here, Defendant fails to raise any governmental interests that illustrate Plaintiffs' petitions should not be afforded First Amendment protection. Nor does the Defendant argue that the Defendant treats every other member of the general public in the same manner. Without such an argument, Defendant must provide an

alternative argument — asserting that the Defendant had an adequate justification for treating Plaintiffs differently — in order to defeat Plaintiffs' First Amendment claim. But the Defendant fails to raise that argument either. Consequently, at this stage in the litigation, the Court ought to conclude that Plaintiffs' petitions are entitled to protection under the First Amendment.

### IV. Exhaustion of Remedies is a Rule 12(b)(6) Challenge and Exhaustion May Be Generally Pled.

Contrary to the Defendant's suggestion, challenges to the exhaustion of administrative remedies arise under Rule 12(b)(6), not Rule 12(b)(1). Indeed, in similar circumstances, the Eleventh Circuit has held that exhaustion of administrative remedies requirement functions as an administrate precondition to suit, rather than a jurisdictional prerequisite that would trigger application of Rule 12(b)(1). *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1003 (11th Cir. 1982) (*citing Zipes* and concluding "that the conditions precedent to filing a Title VII suit are not jurisdictional prerequisites"). As such, the Court is due to find that the Defendant's exhaustion challenge is more appropriately treated under the Rule 12(b)(6) failure to state a claim standard. *See, e.g., McIntyre v. Aurora Cares, LLC*, No. CA 10-0208–KD–C, 2011 U.S. Dist. LEXIS 79775, 2011 WL 2940939, at *2 n.3 (S.D. Ala. July 21, 2011) ("[C]ourts tend to treat such motions as seeking dismissal in accordance with Rule 12(b)(6) as opposed to Rule 12(b)(1)."); *Banks v. Ackerman Security Systems, Inc.*, No. 1:09-CV-0229-CC, 2009 U.S. Dist. LEXIS 30596, 2009 WL 974242, at *2 n. 3 (N.D. Ga. April 10, 2009); *Crawford v. Winter*, No. 2:07-cv-702-FtM-29SPC, 2008 U.S. Dist. LEXIS 60002, 2008 WL 3260509, at *1 (M.D. Fla. Aug.7, 2008) (considering motion to dismiss for failure to exhaust

administrative remedies pursuant to Rule 12(b)(6) rather than Rule 12(b)(1)).

It being well-settled that Rule 12(b)(6) controls an exhaustion of administrative remedies challenge in a motion to dismiss, the only issue for the Court to decide at this early juncture is whether the complaint alleges a satisfaction of a condition precedent under Rule 9(c), and this need only be alleged generally. *See Markwart v. UPS*, No. 2:13-cv-186-FtM-38DNF, 2013 U.S. Dist. LEXIS 103536, at *15 (M.D. Fla. July 24, 2013) (*citing Smith v. Williams*, 819 F. Supp. 2d 1264, 1270 (M.D. Fla. 2011)); *see also Mercek v. Northwest Airlines Corp.*, 2007 U.S. Dist. LEXIS 93608, 2007 WL 4557153, at *2 (S.D. Fla. Dec. 20, 2007) (finding plaintiff's allegations that "[a]ll administrative remedies have been exhausted, or, in the alternative, such exhaustion is either not required, has been waived or is futile" were sufficient to survive a motion to dismiss). As the Second Amended Complaint meets these requirements at ¶87, the Defendant's Motion is due to be denied.[4]

## **CONCLUSION**

WHEREFORE, the Plaintiff respectfully requests that the Court enter an Order denying Defendant's Motion to Dismiss and all other relief the Court deems just and proper.

---

[4] Should the Court conclude that Rule 12(b)(1) applies, the Plaintiffs respectfully request that they be afforded the opportunity to conduct discovery related to Defendant's allegation of an alleged failure to exhaust administrative remedies prior to the Court arriving at any conclusion that there has been such a failure.

Respectfully submitted,


Dated: November 14, 2018         **s/ Benjamin H. Yormak**
                                 Benjamin H. Yormak
                                 Florida Bar Number 71272
                                 Trial Counsel for Plaintiff
                                 Yormak Employment & Disability Law
                                 9990 Coconut Road
                                 Bonita Springs, Florida 34135
                                 Telephone: (239) 985-9691
                                 Fax: (239) 288-2534
                                 Email: byormak@yormaklaw.com


### CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.


                                 **s/ Benjamin H. Yormak**
                                 Benjamin H. Yormak