UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY BACKHURST, an individual and ANGEL CRUZ, an individual,

    Plaintiffs,

v.                             Case No: 2:18-cv-61-FtM-99UAM

LEE COUNTY, a political subdivision of the State of Florida,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss (Doc. #35) and Declaration of David W. Harner II (Doc. #36) filed in support on October 11, 2018. Plaintiffs filed a Response in Opposition (Doc. #39) on November 14, 2018. For the reasons set forth below, the Motion is denied.

**I.**

Plaintiffs Anthony Backhurst and Angel Cruz were employed as supervisors of field operations of defendant Lee County's Domestic Animal Services Department. Plaintiffs filed a four-count Second Amended Complaint (Doc. #34) against Lee County, Florida (Lee County or the County) alleging that the termination of their employment violated the Florida Whistleblower's Act, the federal False Claims Act, and the First Amendment to the United States

Constitution. The facts that led to plaintiffs' employment terminations, as set forth in the Second Amended Complaint, are as follows:

**A. Backhurst's Subpoenaed Testimony**

On January 31, 2017, Backhurst testified pursuant to subpoena in a state court trial on behalf of two former County Animal Services employees who were asserting claims for whistleblower retaliation against Lee County. (Doc. #34, ¶¶ 12-17.) Backhurst's testimony was highly critical of the County, and various supervisors expressed their displeasure to Backhurst about his testimony. (Id., ¶ 17.) That case was widely reported on the local television and print news media. (Id., ¶ 13.)

**B. Petition For Redress of Grievances**

On April 24, 2017, Backhurst and Diaz petitioned the County for redress of grievances by sending a written, signed complaint to the County's "Chief Executive". (Doc. #34, ¶ 20.) The complaint detailed violations of law, rules, and/or regulations, together with gross mismanagement, malfeasance, and misfeasance of the County. (Id.) The grievances included, but were not limited to, allegations that defendant had:

- Illegally altered public records
- Allowed a grossly unsafe workplace
- Allowed animal cruelty

- Grossly wasted public funds by overpaying for expensive equipment

- Paid false claims against defendant by virtue of defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon defendant

- Failed to adhere to a court order

- Violated Title VII of the Civil Rights Act of 1964, including by condoning public employees giving Nazi-salutes in public

(Id., ¶ 21.) As a result of these grievances, an investigation into Animal Services was commissioned by the County Chief Executive. (Id., ¶ 23.) On June 2, 2017, both plaintiffs were willingly interviewed by a third-party investigator who was employed to investigate and recommend corrective action. (Id., ¶¶ 23, 24, 35, 36.) Both plaintiffs disclosed information consistent with their written complaint. (Id., ¶¶ 25, 27.)

**C. Termination of Employment**

On June 28, 2017, each plaintiffs' employment was terminated. (Doc. #34, ¶ 37.) Defendant informed plaintiffs that they were terminated "[a]s a result of a recent investigation of the Lee County Domestic Animal Services Department," and cited Lee County "Policy 101: Employee Behavior." (Id., ¶ 38.) Before their termination, plaintiffs had not been subject to any discipline, had performed their assigned duties in a professional manner, were well qualified for their positions, and received positive performance reviews. (Id., ¶¶ 41-42.) Plaintiffs state that

- 3 -

their terminations were not a part of a reduction in force and there was no budgetary need to terminate them. (Id., ¶¶ 39-40.) Plaintiffs assert the terminations were a direct and proximate result of their petitioning defendant for redress of grievances, reporting defendant's violations of the law to the appropriate officials, and objecting to the County's illegal practices. (Id., ¶ 43.)

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus,

551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

Defendant moves to dismiss the First Amendment and False Claims Act claims (Counts I-III) for failure to state a claim, and to dismiss the Florida Whistleblower Act claim (Count IV) for lack of subject matter jurisdiction due to plaintiffs' failure to exhaust administrative remedies. The Court address each count in turn.

**A. Count I – First Amendment Free Speech Claim by Backhurst**

Count I alleges that Backhurst's subpoenaed, sworn trial testimony in the case brought by two former County employees is entitled to First Amendment protection. (Doc. #34, ¶¶ 12-17, 44-

54.) Plaintiff further asserts that his employment termination was a direct and proximate result of that trial testimony, thus violating the First Amendment. (Id., ¶¶ 49-50, 52-54.)

The constitutional right at issue in Count I is the First Amendment's right of free speech. "A government employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." City of San Diego v. Roe, 543 U.S. 77, 80 (2004). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citations omitted). It is well established that "[a] government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment." Alves v. Bd. of Regents of the Univ. Sys. of Georgia, 804 F.3d 1149, 1159 (11th Cir. 2015). To establish a claim under the First Amendment, a plaintiff must plead and ultimately prove that: (1) he was speaking; (a) as a citizen; (b) on a matter of public concern; (2) his interests in speaking outweighed the interests of the government as an employer under the Pickering framework[1]; and (3) the speech played a substantial or motivating role in the adverse employment action. Lane v.

---

[1] Pickering v. Bd. of Ed. of Township High School Dist. 205, Will Cty., 391 U.S. 563 (1968).

Franks, 573 U.S. 228, 235-42 (2014); Alves, 804 F.3d at 1159-60; Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007).

The County seeks dismissal of Count I on three grounds: (1) Backhurst did not speak as citizen, but rather was identified as a witness on the County's witness list, and therefore testified as part of his responsibilities to his employer; (2) Backhurst did not testify to a matter of public concern, because the testimony involved his own personal grievances; and (3) the count fails to sufficiently plead a causal connection between Backhurst's trial testimony and his employment termination. The Court discusses each in turn.

**(1) Testimony as Employee or Citizen**

The County asserts that Backhurst testimony was as an employee of the County, not as a private citizen, and therefore is not protected by the First Amendment. The Court finds that the Second Amended Complaint plausibly pleads that plaintiff's testimony was as a private citizen.

In Lane v. Franks, the Supreme Court held that "[t]ruthful testimony [in court] under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. This is so even when the testimony relates to his public employment or concerns information learned during that employment." 573 U.S. 228, 238 (2014). The Supreme Court noted that although an employee might have an obligation to his

employer to show up to court, that obligation "is distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity as an employee." Id. at 239. Here, the allegations of the Second Amended Complaint plausibly allege facts showing that plaintiff's testimony was as a private citizen within the meaning of Lane v. Franks. (Doc. #34, ¶ 46.) The motion to dismiss on this ground is denied.

    **(2)    Matter of Public Concern**

The County argues that Backhurst's testimony, even if it was made as a citizen and not as an employee, did not address a matter of public concern, and therefore is not protected by the First Amendment. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the content, form, and context of the speech." Lane, 573 U.S. at 241. See Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007) (internal citations omitted.)

While the details of Backhurst's trial testimony are not set forth, Backhurst has alleged that he offered highly critical testimony against Lee County in a whistleblower retaliation case

widely reported in the media. (Doc. #34, ¶¶ 12-17.) "Exposing governmental inefficiency and misconduct is a matter of considerable significance." Garcetti, 547 U.S. at 425. Backhurst has also alleged that the testimony was under oath in a judicial proceeding, and that it was made as a citizen about a matter of public concern. Thus, Backhurst has plausibly alleged that his testimony addressed a matter of public concern. Lane, 573 U.S. at 241. The motion to dismiss on this ground is denied.

### (3) Proximate Causation

The County argues that Backhurst has failed to set forth sufficient facts to establish that the state court testimony was the proximate cause of his employment termination. Other than repeatedly stating that the testimony was the direct and proximate cause of his employment termination (Doc. #34, ¶¶ 49, 52-55), the only facts alleged are that Backhurst was terminated almost five months following his trial testimony, and that various supervisors had expressed displeasure with the testimony (Id., ¶ 17.)

Contrary to plaintiff's argument, causation must be supported by plausible facts. Bank of Am. Corp. v. City of Miami, Fla., 137 S. Ct. 1296, 1305-06 (2017); Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1350-51 (11th Cir. 2016); Wall-DeSousa v. Florida Dep't of Highway Safety & Motor Vehicles, 691 F. App'x 584, 591 (11th Cir. 2017) ("The Wall-DeSousas must also sufficiently allege facts to support a finding of a causal connection between their protected

speech and the adverse conduct that they suffered.") Plaintiff's reliance on Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) is unavailing. While plaintiff need not plead a prima facie case to survive a motion to dismiss, a complaint must be plausible on its face and the allegations must rise above the speculative level. McCullough v. Bd. of Regents of the Univ. Sys. of Georgia, 623 F. App'x 980, 982–83 (11th Cir. 2015).

To establish a causal connection in a retaliation case, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (discussing retaliation under Title VII). See also Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1260 (11th Cir. 2012) ("not completely unrelated"). Close temporal proximity between the protected conduct and the termination may be sufficient. Wagner v. Lee County, 678 F. App'x 913, 923 (11th Cir. 2017). From the allegations in the Second Amended Complaint, it is a reasonable inference that the County's decision-makers knew of plaintiff's state court testimony and that the testimony was not wholly unrelated to the termination of his employment.[2] The motion to dismiss on this ground is denied.

---

[2] While plaintiff also alleges that his termination was the result of his petition of grievances filed with the County

**B. Count II - First Amendment Petition Clause Claim By Backhurst and Cruz**

Plaintiffs allege that defendant violated their rights under the Petition Clause of the First Amendment by terminating their employment in retaliation for filing a complaint with the Lee County Executive seeking redress of their grievances. The County argues that the grievances were not a matter of public concern, but rather were related to the operations of the Animal Services Department, and therefore were part of plaintiffs' job duties and not protected by the First Amendment.

The Court applies the same public concern test developed in Free Speech Clause cases (as set forth above) to resolve Petition Clause claims. Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 392-94 (2011); Grigley v. City of Atlanta, 136 F.3d 752, 755 (11th Cir. 1998). "The forum in which a petition is lodged will be relevant to the determination of whether the petition relates to a matter of public concern." Guarnieri, 564 U.S. at 398. "A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." Id. The petitioning process is not a forum

---

Executive, the fact that there are multiple plausible causations is not fatal to plaintiff's claim. City of Miami v. Citigroup Inc., 801 F.3d 1268, 1276 (11th Cir. 2015).

to "transform everyday employment disputes into matters for constitutional litigation in federal courts," but is a right of a public employee to participate as a citizen in the democratic process. Id. at 399.

Here, the grievances included, but were not limited to, allegations of:

- Illegal alteration of public records

- Allowing a grossly unsafe workplace

- Allowing animal cruelty

- Gross waste of public funds by overpaying for expensive equipment

- False claims against defendant by virtue of defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed upon defendant

- Failing to adhere to a court order

- Various violations of Title VII, including condoning public employees giving Nazi-salutes in public

(Doc. #34, ¶ 21.) From the allegations, it is not plausible that the grievances about a safe workplace and allowing animal cruelty were not within the job duties of supervisors like plaintiffs. As to the other topics, the Court finds that at this stage of the proceedings plaintiffs have plausibly alleged that their grievances were a matter of public concern and were spoken as citizens rather than employees. The motion to dismiss Count II is denied.

**IV. Count III – Federal False Claims Act (FCA)**

In Count III, plaintiffs allege that the County violated the federal False Claims Act by terminating their employment in retaliation for their petition of grievances. Plaintiffs asserted that the County had received an unstated amount of federal grants the previous calendar year.

"The FCA prohibits fraud against government programs" and allows either the United States government or private citizens to file civil lawsuits to enforce its provisions. U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 809 (11th Cir. 2015). To encourage private citizens with knowledge of FCA violations to come forward, the FCA contains an anti-retaliation provision which prohibits employers from discharging, demoting, threatening, harassing, or otherwise discriminating against an employee who acts in furtherance of an FCA claim or attempts to stop an FCA violation. 31 U.S.C. § 3730(h). Employers who violate the anti-retaliation provision are subject to civil suits by aggrieved employees. Id. To prevail on an FCA retaliation claim, a plaintiff must show that: (1) he engaged in conduct protected by the FCA; (2) the defendant was aware of the plaintiff's actions; and (3) the plaintiff was discriminated against in retaliation for his conduct. Mack v. Augusta-Richmond Cnty., 148 F. App'x 894, 897 (11th Cir. 2005). Unlawful discrimination includes discharge from employment. 31 U.S.C. § 3730(h)(1).

The prototypical example of conduct protected by the FCA is the filing of an FCA claim. U.S. ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303 (11th Cir. 2010). The FCA also protects employees from retaliation if "there was at least a distinct possibility of litigation under the [FCA] at the time of the employee's actions." Id. Thus, the FCA prohibits retaliation against an employee who "put her employer on notice of possible [FCA] litigation by making internal reports that alert the employer to fraudulent or illegal conduct," even if an FCA claim is never filed. Id. at 1304. But, mere reporting of wrongdoing to supervisors, without alleging that the wrongdoing constitutes fraud on the federal government, does not qualify as protected conduct. Put simply, "[i]f an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a qui tam action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h)." Id.

The County argues that the False Claims Act count fails because the Act applies only to false claims against the federal government, and plaintiffs only make conclusory allegations that the federal government is involved here. In response, plaintiffs state that they allege in their Second Amended Complaint that "[i]n 2015/2016, the Defendant received approximately $153,706,847 in

grants from *federal* and state agencies, of which approximately $1.3 million was appropriate to Public Safety (which includes animal services programs)."  (Doc. #34, ¶ 70) (emphasis added). Plaintiffs also allege:

> The Plaintiffs believed in good faith, and a reasonable employee in the same or similar circumstances would also believe, that false claims were being committed by virtue of Defendant's employees engaging in illegal bid-rigging and allowing best-rate fraud to be committed, all of which could have impacted federal funds by virtue of Lee County obtaining such federal funds and not using them for their proper purpose, in addition to the federal funds being misappropriated.

(Id., ¶ 71.)  Plaintiffs state that the County was aware of plaintiffs' disclosures of these alleged misdeeds at the time of their termination.  (Id., ¶ 72.)

Plaintiffs allege that their grievances to the County included complaints of misappropriation of federal and state funds.  While the allegations are humble in their substance, at this stage of the proceedings the Court concludes that the allegations support a reasonable inference that the County could have feared being reported to the federal government for fraud.  Plaintiffs also allege that they were terminated just 26-days after their complaints.  Plaintiffs have adequately pled an FCA retaliation cause of action.

### V. Count IV - Florida Whistleblower Act (FWA)

The County next argues that plaintiffs failed to exhaust their administrative remedies prior to filing this action, and therefore

this Court lacks subject matter jurisdiction and dismissal is appropriate under Federal Rule 12(b)(1). Plaintiffs respond that in the exhaustion context the Federal Rule 12(b)(6) standard applies and that satisfaction of administrative remedies need only be pled generally, which is what plaintiffs have done here. See Doc. #34, ¶ 87.

The FWA prohibits a state agency from dismissing or disciplining an employee for disclosing violations or suspected violations of federal, state, or local law, or any act of gross mismanagement, malfeasance, or misfeasance. Fla. Stat. § 112.3187. Before filing a FWA suit, a local public employee such as plaintiff must first "file a complaint with the appropriate local governmental authority, if that authority has established by ordinance an administrative procedure for handling such complaints or has contracted with the Division of Administrative Hearings ... to conduct hearings under this section." Fla. Stat. § 112.3187(8)(b). "Under Florida law, a public employee must first exhaust his administrative remedies – by filing a complaint with the 'appropriate local governmental authority, if that authority has established by ordinance an administrative procedure for handling such complaints' - before filing a civil action for violation of the Florida Whistleblower's Act. See Fla. Stat. § 112.3187(8)(b)." Titus v. Miami Dade County, 17-14843, 2018 WL 6433680, *2 (11th Cir. Dec. 7, 2018). If the local governmental

authority does not resolve the complaint to the public employee's liking, the employee may then sue. Id. Here, the County offers the Declaration of David W. Harner II, Lee County's Assistant County Manager, to show that applicable administrative remedies existed. (Doc. #36.)

At least one Florida appellate court has held that failure to exhaust administrative remedies divests the trial court of jurisdiction. Dist. Bd. Of Trustees of Broward Cmty. Coll. v. Caldwell, 959 So. 2d 767, 769 (Fla. 4th DCA 2007). Notwithstanding, exhaustion of administrative remedies is generally not a jurisdictional prerequisite to filing a complaint in federal court, as recognized by the Supreme Court in the employment context. See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which is not affected by administrative exhaustion of a state law claim. Therefore, the Court will treat defendant's Motion to Dismiss as one under Fed. R. of Civ. P. 12(b)(6) and not under Fed. R. of Civ. P. 12(b)(1).

Nonetheless, the state law claim is subject to dismissal if there has been a failure to exhaust administrative remedies. City

of Miami v. Del Rio, 723 So. 2d 299, 300 (Fla. 3d DCA 1998) (dismissing whistleblower claim because the plaintiff failed to exhaust administrative remedies).  Here, plaintiffs have alleged that they "exhausted all administrative remedies within the meaning of the law."  (Doc. #34, ¶ 87.)  Satisfaction of conditions precedent, such as exhaustion of administrative remedies, need only be alleged generally.  Fed. R. Civ. P. 9(c). Thus, the County's motion to dismiss on this basis is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss (Doc. #35) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __27th__ day of February, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record